AO 442 (Rev. 10/03) Warrant for Arrest

# UNITED STATES DISTRICT COURT

District of HAWAII

UNITED STATES OF AMERICA
V.
PATRICIA M. SYLING

## WARRANT FOR ARREST

Case Number: MAG. NO. 06-0738 BMK

06   145

To: The United States Marshal
and any Authorized United States Officer

**YOU ARE HEREBY COMMANDED** to arrest _____ PATRICIA M. SYLING

Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of court  ☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice

charging him or her with   (brief description of offense)

MAIL FRAUD

ATTEST: A True Copy
SUE BEITIA
Clerk, United States District
Court, District of Hawaii
By_____
                                      Deputy

in violation of Title 18 _____ United States Code, Section(s) 1341

BARRY M. KURREN
Name of Issuing Officer

UNITED STATES MAGISTRATE JUDGE
Title of Issuing Officer

Signature of Issuing Officer

12/13/2006        Honolulu Hawaii
Date and Location

| RETURN |
|--------|
| This warrant was received and executed with the arrest of the above-named defendant at |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OAO91 (Rev. 12/03) Criminal Complaint

# UNITED STATES DISTRICT COURT

DEC 13 2006
at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

DISTRICT OF    HAWAII

UNITED STATES OF AMERICA
V.
PATRICIA M. SYLING

### CRIMINAL COMPLAINT

Case Number: MAG. NO. 06-0738 BMK

8:06M 1451 MAP

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about _from 1/20/02 to 1/1/04_ in _____ County, in
(Date)

the _____ District of _____HAWAII_____ defendant(s) did,

(Track Statutory Language of Offense)
KNOWINGLY AND INTENTIONALLY DEVISE A SCHEME AND ARTIFICE TO DEFRAUD ANOTHER OF
MONEY OR PROPERTY BY MEANS OF MATERIALLY FALSE AND FRAUDULENT PRETENSES,
REPRESENTATIONS OR PROMISES, AND FOR THE PURPOSE OF EXECUTING SUCH SCHEME DID
PLACE A MAIL MATTER INTO A POST OFFICE OR AUTHORIZED DEPOSITORY FOR MAIL MATTER TO BE
SENT OR DELIVERED BY THE UNITED STATES POSTAL SERVICE

in violation of Title ___18___ United States Code, Section(s) ___1341___ .

I further state that I am a(n) ___Special Agent, FBI___ and that this complaint is based on the
Official Title

following facts:

See Attached Affidavit of Jason S. Cherry

Continued on the attached sheet and made a part of this complaint:  ☒ Yes    ☐ No

_Signature of Complainant_

JASON S. CHERRY
Printed Name of Complainant

Sworn to before me and signed in my presence,

12/13/2006                                          at    Honolulu          Hawaii
Date                                                       City               State

BARRY M. KURREN         U.S. Magistrate Judge
Name of Judge           Title of Judge              Signature of Judge

Name of Judge

Title of Judge

Signature of Judge

## AFFIDAVIT OF JASON S. CHERRY

Jason S. Cherry, after being duly sworn, deposes and states as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since February of 2002. Previously, I was employed as a Criminal Defense Attorney for four and a half years, and licensed to practice law in California, Oregon, and Washington. I am presently assigned to the Honolulu Division of the FBI in the White Collar Crime Squad and in that capacity have been assigned to assist in the investigation of Wire and Mail Fraud. I am authorized by law to conduct investigations and make arrest under these and other federal criminal statutes.

2.     In the course of my duties, I have assisted in the investigation of financial fraud schemes that included money laundering and various methods of financial fraud. My experience also includes the training and advice received from agents who have investigated bank and healthcare fraud matters.

3.     The following facts are true based on my personal knowledge, or information I have learned through the course of this investigation, including information which I have received from witnesses, other investigators and law enforcement agents, and my review of documentary evidence gathered to date.

4.     PATRICIA M. SYLING (hereinafter "SYLING") was a resident of the City and County of Honolulu, Hawaii, from at least on or about January 1, 2001, to on or about October 1, 2004. During some or all of that period of time, SYLING was employed by Queens Medical Center as its "Corporate Compliance Administrator," a position which included within its duties the responsibility for directing collection activities by QMC from various private healthcare

insurers and government entities.

5. "HealthCare Financial & Compliance Management" ("HFCM") is a fictitious business name for a sole proprietorship business created by SYLING.

6. "HealthCare Financial Group" ("HFG") is a fictitious business name for a sole proprietorship business created by SYLING.

7. The Queens Medical Center ("QMC") is a not-for-profit medical services provider/hospital in Honolulu, Hawaii. "D.J." is a senior executive and corporate officer of QMC.

8. Within the course and scope of her responsibilities as Corporate Compliance Administrator for QMC, SYLING was authorized to solicit and negotiate the terms of vendor and service contracts with respect to QMC's billing and collection operations. The execution of all such contracts on behalf of QMC was the responsibility of D.J., a corporate officer.

9. As part of the scheme and artifice to defraud, on January 21, 2002, SYLING caused D.J. to execute on behalf of QMC, Contract No. 02-127, an "Agreement for Consulting Services" with HFCM, a sole proprietorship created by SYLING. The scope of the services called for under the terms of the contract included a review of QMC's "HIPAA Compliance and a Risk Assessment", and the submission of a "Final Report" regarding the same. The contract provided for a payment of $40,000 to HFCM for those services.

10. Verification of the performance of the services called for in Contract No. 02-127, and a recommendation for payment under the terms of the contract, was the responsibility of SYLING within the course and scope of her employment as the Corporate Compliance Administrator for QMC.

11. SYLING did not disclose to QMC prior to the execution of Contract No. 02-127 that

HFCM was a sole proprietorship business owned and operated by her from her residence in Hawaii, with herself as its only employee.

12. On or about March 26, 2002, SYLING caused an HFCM "Invoice" to be delivered to QMC for payment of $40,000 under the terms of Contract No. 02-127. The "consulting services" called for in the contract, to the extent they had been provided at all, had been provided by SYLING within the course and scope of her employment as the Corporate Compliance Administrator for QMC. QMC administrators can find no record of any such work being performed.

13. On or about March 29, 2002, SYLING caused a QMC "Voucher" to be prepared, which was authorized by herself and D.J., directing payment of $40,000 by QMC to HFCM consistent with the QMC Invoice and Contract No. 02-127.

14. On or about April 6, 2002, QMC issued check 655477 in the amount of $40,000, payable to "Healthcare Financial & Compliance Management."

15. On or about December 26, 2001, SYLING opened Business Checking Account No. xxxx5239 (account 5239) with Bank of America in Nashville, Tennessee, under the name "Patricia M. Clearysyling d/b/a Healthcare Financial & Compliance Management." I am informed and believe that SYLING has also used the name "Patricia Cleary" in the past. On or about April 15, 2002, QMC check 655477 was deposited into SYLING'S Bank of America account 5239.

16. On or about November 5, 2002, SYLING caused D.J./QMC to enter into Contract No. 03-083, an "Agreement for Professional Services Compliance Management" with HFG, another fictitious business name for a sole proprietorship created by SYLING. The scope of the services called for under the terms of this contract included providing "various compliance

management services" to "prompt the physicians to document medical necessity in a more detailed manner." The contract provided for a payment of a fee not to exceed $270,000 to HFG for a one year period from October 2002 to October 2003 for those services.

17. Verification of the performance of the "compliance management services" called for in Contract No. 03-083, and a recommendation for payment under the terms of the contract, was the responsibility of SYLING within the course and scope of her employment as the Corporate Compliance Administrator for QMC.

18. SYLING did not disclose to QMC prior to the execution of Contract No. 03-083 that HFG was a sole proprietorship business owned and operated by her from her residence in Hawaii, with herself as its only employee.

19. In furtherance of the scheme and artifice to defraud, on or about November 20, 2002, only 15 days after the execution of Contract 03-083, SYLING caused a QMC "Voucher" to be prepared, directing payment of $90,000 by QMC to HFG under the terms of that contract. The compliance management services called for in the contract, to the extent they had been provided at all, had been provided by SYLING within the course and scope of her employment as the Corporate Compliance Administrator for QMC. Administrators of QMC can find no evidence of any work being performed pursuant to this contract.

20. On or about November 21, 2002, QMC issued check 631789 in the amount of $90,000, payable to "Healthcare Financial Group." On or about November 26, 2002, QMC check 631789 was deposited into the SYLING'S Bank of America account 5239.

21. Seven weeks later, on or about February 7, 2003, SYLING caused a QMC "Voucher" to be prepared directing payment of $90,000 by QMC to HFG. The compliance management services called for in Contract 03-083, to the extent they had been provided at all, had been

provided by SYLING within the course and scope of her employment as the Corporate Compliance Administrator for QMC.

22. On or about February 28, 2003, QMC issued check 631843 in the amount of $90,000, payable to "Healthcare Financial Group." On or about March 12, 2003, QMC check 631843 was deposited into the SYLING'S Bank of America account 5239.

23. On or about July 16, 2003, SYLING caused a QMC "Voucher" to be prepared, directing payment of $40,000 by QMC to HFG. The compliance management services called for in Contract 03-083, to the extent they had been provided at all, had been provided by SYLING within the course and scope of her employment as the Corporate Compliance Administrator.

24. On or about July 19, 2003, QMC issued check 698137 in the amount of $40,000, payable to "Healthcare Financial Group." On or about July 31, 2002, QMC check 631789 was deposited into the SYLING'S Bank of America account 5239.

25. On or about September 2, 2003, SYLING caused a QMC "Voucher" to be prepared, directing payment of $50,000 by QMC to HFG. The compliance management services called for in Contract 03-083, to the extent they had been provided at all, had been provided by SYLING within the course and scope of her employment as the Corporate Compliance Administrator.

26. On or about September 6, 2003, QMC issued check 702252 in the amount of $50,000, payable to "Healthcare Financial Group." On or about September 15, 2003, QMC check 702252 was deposited into the SYLING'S Bank of America account 5239.

27. I am informed and believe that Bank of America at one time operated a network of bank branches throughout the State of Hawaii, but sometime in the 1990's Bank of America withdrew from the Hawaii market. I am also informed and believe that for Hawaii customers who desired to maintain their banking relationship, Bank of America instituted a process where

deposit items are mailed to a Bank of America central receiving location in Tampa, Florida, using pre-addressed envelopes provided by the bank. I am further informed and believe that deposit items received at the Tampa, Florida location are cleared and posted to customer accounts through a processing center in Charlotte, North Carolina. Each of the QMC checks referenced herein which were deposited into the SYLING's Bank of America account were cleared and posted through the Bank of America processing center in Charlotte, North Carolina, having first been mailed to the Bank of America receiving center in Tampa, Florida.

28. Based on the information herein, I believe there is probable cause to conclude that SYLING has committed mail fraud in violation of Title 18, United States Code, Section 1341, in that she knowingly and intentionally devised a scheme and artifice to defraud QMC of money by means of materially false and fraudulent pretenses and representations, and for the purpose of executing this scheme and artifice to defraud she did place in a post office or authorized depository for mail matter, a matter or thing to be sent or delivered by the Postal Service, including but not limited to, the checks from QMC under the terms of the fraudulent contracts.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of December, 2006, at Honolulu, Hawaii.

JASON S. CHERRY, Special Agent
Federal Bureau of Investigation.

Subscribed and sworn before me, this 13th day of December, 2006.

Hon. Barry M. Kurren,
United States Magistrate Judge